UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEVIN FERRY, AS ADMINISTRATOR OF THE ESTATE OF TYLEA HUNDLEY,<br><br>              Plaintiff<br><br>   v.<br><br>MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, and ABBOTT LABORATORIES, INC.,<br><br>              Defendants. | Civil Action No. 3:20-cv-00099<br><br>Chief Judge Stefan R. Underhill |

**ABBOTT'S OPPOSITION TO PLAINTIFF'S REQUEST
FOR LEAVE TO FILE AMENDED COMPLAINT AND
<u>MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS</u>**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **INTRODUCTION** | | 1 |
| **BACKGROUND** | | 3 |
| | A. Prior complaints, amendments, and briefs | 3 |
| | B. The Court's ruling | 4 |
| | C. Plaintiff's motion for "clarification" | 5 |
| | D. Plaintiff's fifth request to amend the complaint | 5 |
| **ARGUMENT** | | 6 |
| I. | Plaintiff's counsel should be sanctioned | 6 |
| | A. Counsel violated the Court's orders | 6 |
| | B. Counsel has unreasonably and vexatiously multiplied these proceedings | 9 |
| II. | The Court should deny leave to amend | 11 |
| | A. The amendment is futile | 11 |
| | B. The amendment is made in bad faith and would prejudice Abbott | 13 |
| **CONCLUSION** | | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. v. Guerrera*,
   300 F. Supp. 3d 367 (D. Conn. 2018) ...................................................................................12

*Buckman v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ...............................................................................................................13

*Chambers v. NASCO*,
   501 U.S. 32 (1991) ...................................................................................................................7

*Coleman v. Ramada Hotel Operating*,
   933 F.2d 470 (7th Cir. 1991) .................................................................................................12

*Doe v. Bausch & Lomb*,
   443 F. Supp. 3d 259 (D. Conn. 2020) ...................................................................................13

*Galonsky v. Williams*,
   1997 WL 759445 (S.D.N.Y.) ..................................................................................................8

*Goldsmith v. Goldsmith*,
   2017 WL 11471785 ...............................................................................................................13

*Gollomp v. Spitzer*,
   568 F.3d 355 (2d Cir. 2009) ............................................................................................7, 10

*Hasu-Beland v. Abbott Labs.*,
   Case No. 1:20-cv-01199-PB, Dkt. 11 .....................................................................................8

*Jin v. Metro. Life Ins.*,
   310 F.3d 84 (2d Cir. 2002) ....................................................................................................11

*Lugo v. Rapuano*,
   2007 WL 356024 (Conn. Super. Ct.) ...................................................................................10

*Marceaux v. Lafayette City-Par. Consol. Gov't*,
   614 F. App'x 705 (5th Cir. 2015) ...........................................................................................8

*Pratt v. Bayer*,
   2020 WL 5749956 (D. Conn.) ..............................................................................................13

*Rinehart v. Abbott Labs.*,
   No. 1:21-cv-00805-SDG, Dkt. 1 .............................................................................................8

*Royal Indem. v. King*,
    532 F. Supp. 2d 404 (D. Conn. 2008) (Underhill, J.) ............................................................. 11

*SEC v. Yorkville Advisors*,
    2013 WL 5350658 (S.D.N.Y.) ................................................................................................ 12

*In re TCI*,
    769 F.2d 441 (7th Cir. 1985) ................................................................................................. 11

*Townsend v. Corr. Officer Muckle*,
    2017 WL 5606745 (D. Conn.) (Underhill, J.) ........................................................................ 11

*Vann v. Fischer*,
    2010 WL 2889538 (W.D.N.Y.) .............................................................................................. 12

*Wandering Dago v. N.Y. State Off. of Gen. Servs.*,
    2014 WL 12797920 (N.D.N.Y.) ............................................................................................. 12

**Statutes**

28 U.S.C. § 1927 ............................................................................................................................. 6

Conn. Gen. Stat. § 45a-303 .......................................................................................................... 10

Conn. Gen. Stat. §§ 52-572m(b) ................................................................................................... 13

Conn. Gen. Stat. §52-577a(a) ....................................................................................................... 13

**Other Authorities**

Fed. R. Civ. P. Rule 8(a)(2) .......................................................................................................... 11

Restatement (Second) of Torts § 402 ........................................................................................... 15

**INTRODUCTION**

Abbott urges the Court to sanction Plaintiff's Counsel—to stop his continuing, vexatious misconduct and deter him from repeating it in the future—and deny Plaintiff's motion for leave to amend the complaint a fifth time.

*First*, the misconduct by Plaintiff's Counsel deserves sanctions. His proposed amended complaint repeatedly accuses Abbott (and Mead Johnson) of killing babies for profit. That is the same false and scandalous accusation that this Court previously ruled has "no value" and struck from a brief Counsel filed. In proposing an amended complaint that *repeats* those very same accusations, Counsel is intentionally violating the Court's ruling.

Moreover, Counsel and his repeated, unnecessary amendments are unreasonably and vexatiously multiplying these proceedings for an improper purpose: to delay and prevent Defendants' arguments against his case, including threshold arguments about the learned intermediary doctrine and preemption, from making forward progress. At this writing, the parties have devoted almost 170 pages of briefs to the adequacy of the complaint and its amendments (not counting Mead Johnson's response brief and Plaintiff's reply). Most recently, the Court provided the parties with specific instructions about how the parties should proceed: "engage in *limited* discovery regarding *facts* that will be important in resolving whether the learned intermediary doctrine applies," after which the Court will certify the issue to the Connecticut Supreme Court. But instead of following the Court's order, Counsel proposes to amend the complaint—for the *fifth* time—for the admitted purpose of piling on allegations—not facts—that he thinks he can use with the Connecticut Supreme Court. There is simply no point to this latest round of briefing.

Instead, it appears to be part of Counsel's effort to slow down proceedings in this Court while he advertises to recruit new plaintiffs to sue Abbott and others about infant formulas.

1

Counsel hides this fact from the Court by coyly referring to a "growing body" of other infant formula cases that "have led to the discovery of additional information"—but *they are all his cases*. Nor have they led to the discovery of anything: not one has proceeded beyond a complaint or amended complaint. Counsel evidently does not want Abbott's defenses in this Court to make any further headway, lest they undermine the cottage industry he is trying to build.

*Second,* Plaintiff's motion for leave to amend should be denied. It is futile and a waste of party and court resources. It does not seek to replead a dismissed claim or to add any new claim. Instead, it only continues to pile allegations on top of causes of action that this Court held state a claim. As many courts have recognized, it does not advance litigation for a plaintiff to re-state already stated claims.

The amendment's futility can also be seen in the particular allegations it seeks to add to the complaint. To take only the worst example, the amendment *adds* to the marketing allegations this Court dismissed, even stretching the allegations back to the 1980s. As a matter of law, these allegations cannot have had any effect on decisions doctors made in the Yale Neonatal Intensive Care Unit nearly 40 years later.

The amendment is also made in bad faith, for the reasons stated above and because it intentionally misconstrues statements about other Abbott formulas, which are not at issue in this case, to pretend that Abbott has somehow conceded that the formulas at issue here hurt infants. The new allegations show nothing other than the lengths to which Plaintiff will go to try to attack Abbott.

This case needs to be put back on track. Abbott urges this Court to sanction Plaintiff's counsel, admonish him that further misconduct will not be tolerated, direct him to prepare for certification, and deny leave to file the futile and wasteful amendment to the complaint.

## BACKGROUND

### A. Prior complaints, amendments, and briefs

Since this case began over 14 months ago, Plaintiff has repeatedly amended the complaint and caused the parties to file brief after brief about it. After Defendants moved to dismiss the original complaint, Plaintiff filed a first amended complaint. Defendants again moved to dismiss, and the parties briefed the motion. Plaintiff then amended the complaint again. By then, the complaint had 82 more paragraphs and was 44 pages longer than when the case started, and the parties had already filed 109 pages of briefs.

Plaintiff's opposition to the motion to dismiss contained highly inflammatory and inappropriate statements about Abbott killing babies for profit. Abbott moved to strike them and for sanctions. The parties briefed the motion.

The Court heard 90 minutes of oral argument on the motions to dismiss and to strike, granting the latter and taking the former under advisement. During the argument, Plaintiff made a third request for leave to amend the complaint, asking to "do research" to find a false statement that several claims needed but lacked. The Court took that request under advisement.

Not content to wait for the Court's ruling, a week later Plaintiff filed his fourth request to amend, which sought to support the warranty and misrepresentation claims by adding 4 pages of allegations and 18 printouts of marketing materials from Defendants' websites—***none of which pertained to the products at issue in this case***, and many of which Counsel collected days before filing. The parties briefed Plaintiff's motion. In the ruling on the motion to dismiss, the Court granted that fourth request to amend—but found the exhibits useless. Then, after the Court's ruling, Plaintiff immediately moved to clarify it. The parties briefed that motion, too.

Now Plaintiff has made his *fifth* request for leave to amend. The motion he filed is the 20th brief so far in this case. Including this response (the 21st brief), the total pages of briefing

3

about the complaint and amendments are around 169—not counting Mead Johnson's response and Plaintiff's upcoming reply.

B.   **The Court's ruling**

This Court granted in part and denied in part the motions to dismiss. (Dkt. 87.) As noted, the Court granted Plaintiff's fourth request for leave to amend. (*Id*. at 41.) But the Court held that "none of those statements or exhibits helps [Plaintiff] plead plausible misrepresentation or warranty claims." (*Id*.) The Court dismissed those claims with prejudice.

Plaintiffs' other claims are for design defect and failure to warn. The Court held that "[a]t this motion to dismiss stage," it was "a close question whether federal law preempts [Plaintiff's] claim for design defect …." (*Id*. at 22.) The Court decided to wait for additional factual development before ruling on the argument. (*Id*. at 25, 28–29.)

For the failure to warn claim, the parties disputed the applicability of the learned intermediary doctrine, which would require Defendants to warn only the infant's doctors, not the parents. (*Id*. at 13.) Finding that "Connecticut law does not shed any light on the issue," the Court decided to certify it to the Connecticut Supreme Court in 60 days (*id*.), or in other words on March 26—just over two weeks from now. The Court instructed the parties:

> In the 60 days between now and the date I enter that certification order, the parties are directed to engage in ***limited discovery regarding facts*** that will be important in resolving whether the learned intermediary doctrine applies to [Plaintiff's] failure to warn claim. Those ***facts*** might relate to, but are not limited to, the following issues:
>
> - What are the exact products at issue in this case?
> - How are those products made available for use, both in general and specifically in this case? That is, are those products provided directly to hospitals? Are they available for purchase on store shelves?
> - How are the products at issue in this case marketed?
> - What role, if any, did Tylea's parents play in her care?

4

(*Id*. at 14 (emphasis added).) The Court's ruling did not mention any further amending of the complaint, and of course none was necessary for claims that survived the motion to dismiss.

### C. Plaintiff's motion for "clarification"

Plaintiff immediately moved to clarify—really, reconsider—the Court's ruling. The motion asked the Court to recognize that Plaintiff's position is that the formulas at issue here are not "unavoidably unsafe." The Court swiftly ruled that although that was the position Plaintiff took in the briefing, "the face of [Plaintiff's] allegations in his amended complaint" alleged, in substance, the products are unavoidably unsafe. (Dkt. 92.) The Court denied Plaintiff's motion because the ruling was clear. It took under advisement Plaintiff's request to certify that issue.

### D. Plaintiff's fifth request to amend the complaint

Plaintiff now seeks leave to amend yet again. Too extensive to summarize fully here, the new allegations fall into three categories. The amendment would add allegations related to:

- Infant formula marketing, going back to the 1980s, even though no marketing claims (or breach of warranty and misrepresentation claims) remain in the case. (Proposed 5th Am. Compl. ¶¶ 32–33, 61–70, 100–19, 162(C)(r)–(s), 196–234, 277(C)(r)–(s).)
- Other formulas, developed after the events of this case and not at issue in this case, including one that is the subject of a patent dispute. (*Id*. ¶¶ 47–60.)
- Defendants' knowledge about whether doctors warn their patients of potential risks associated with formula feeding. (*Id*. ¶¶ 145–48, 151, 260–63, 266.)

The amendment does not try to replead any of the dismissed causes of action, nor to add any new causes of action. Instead, *all* of its new allegations are made either to support the two causes of action that this Court has *already* held the prior complaint succeeded in stating.

The proposed fifth amended complaint also continues Plaintiff's habit of making inflammatory and inappropriate statements of the sort that this Court has already stricken. It alleges that Abbott tricks parents into putting their babies' lives at risk with formula, "resulting in … substantial profit to Defendant Abbott." (*Id*. ¶ 204.) It also accuses Abbott of ignoring "that

5

its product was causing N.E.C. and death so that it could continue to profit from the sale of its product," by choosing to "promote, market, and sell their products" at the cost of "causing thousands of premature infants to succumb to N.E.C. and die." (*Id*. ¶¶ 270, 277(D)(b).) And it claims that Abbott hides "the truth" for fear that "[t]he brand name Similac would forever be associated with N.E.C. and death to the detriment of the Corporate image"—and, thus, the profits—"of Abbott." (*Id*. ¶ 263.) The same allegations are made about Mead Johnson. (*Id*. ¶¶ 106, 148, 155, 162(D)(b).) In some of the cases mentioned in Plaintiffs motion for leave to amend, the same group of Counsel make other scandalous allegations, accusing Abbott of "tactics reminiscent of tobacco manufacturers" and trying "to hijack the political and legislative process." (*See* n.1 (below).)

## ARGUMENT

I.  **Plaintiff's counsel should be sanctioned.**

This Court may sanction an attorney who disobeys a court order. *Chambers v. NASCO*, 501 U.S. 32, 45 (1991) (attorney's fees as a sanction). This Court may also require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions are appropriate "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009). Sanctions are appropriate here both for violations of orders and for unreasonably multiplying the proceedings.

A.  **Counsel violated the Court's orders.**

When opposing the motions to dismiss, Plaintiff's counsel accused Abbott of killing babies for profit, a slanderous accusation against a health care company that has spent decades working to perfect formulas for premature infants who desperately need them. This Court

6

granted Abbott's motion to strike that accusation, ruling that there is "no value" in "language like killing infants for profit." (Dkt. 82, Hr'g Tr. at 52: 10–14.)

Counsel promptly forgot or dismissed that ruling. He now accuses Abbott of seeking "substantial profit" by tricking parents into allowing their children to die, harming "thousands of premature infants" in order to "continue to profit from the sale of its product," and covering up thousands of deaths to hide any blemish on "the Corporate image of Abbott."

Those accusations are false and offensive. The idea that Plaintiff's counsel would include them in a proposed complaint—*after* the Court granted a motion to strike nearly identical statements from a brief he filed—offends the judicial process and creates unnecessary burden and expense for the parties and the Court. When an amended complaint includes "the same impertinent, immaterial, and scandalous allegations ... which [counsel] had been warned" by the court not to include, it "forc[es] further filings from the defendants and increase[s] the cost and effort required by the court to comb through the complaint," justifying sanctions. *Marceaux v. Lafayette City-Par. Consol. Gov't*, 614 F. App'x 705, 709 (5th Cir. 2015).

It is impossible to imagine the reason for Counsel's conduct—unless one recalls that he is actively advertising for parents to sue formula manufacturers like Abbott and Mead Johnson. This includes forming a new law firm and touting its work on formula cases, advertising on Facebook, and putting up a new website. The sensationalistic allegations in the complaint are evidently part of that campaign, designed to attract attention in the hope they will lead to more clients and lawsuits. They should lead to sanctions instead. *Galonsky v. Williams,* 1997 WL 759445, at *4–6 (S.D.N.Y.) (sanctioning because an attorney "filed these baseless claims as part of a public relations campaign in order to embarrass the defendants").

Nor does the sensationalism stop with allegations about killing babies for profit.[1] The new complaint adds the pointless, gruesome allegation that necrotizing enterocolitis "often result[s] in large portions of [infants'] intestines being removed and placed in a bag outside of their body, becoming septic, and [infants] often dying in [parents'] arms." (Proposed 5th Am. Compl. ¶ 267; *see also* Mot. at 5.) There is *no* allegation that happened in the present case, *i.e.*, that any terrible surgical procedure was witnessed by the infant's parents.

Enough is enough. Abbott started with the measured step of asking the Court to strike inflammatory statements that have no value to the case, and the Court agreed. But Plaintiff's counsel has now shown, in this case and others, that a stronger measure is needed to get his attention and ensure that his misconduct stops. Abbott therefore requests that he be sanctioned and directed to pay the fees and costs that Abbott incurred in connection with this filing.

Counsel also violated the Court's order on the motion to dismiss. In that order, the Court ruled on the adequacy of the complaint, putting that issue to rest, and set a key, threshold issue in the case on a fast track starting with "limited discovery regarding facts that will be important in resolving whether the learned intermediary doctrine applies to [Plaintiff's] failure to warn claim," followed by certification to the Connecticut Supreme Court.

---

[1] The motion (at 8) states that "Plaintiff did remove several allegations raised by the Defendants" during a phone call. Some of those allegations accused Defendants of "tactics reminiscent of tobacco manufacturers," such as trying "to hijack the political and legislative process, … manipulating public opinion…, fabricating support through front groups, discrediting proven science, and intimidating governments." Removing those preposterous slanders does not make the ones left in the complaint any better. In addition, Counsel made the same "hijacking" and "tobacco" allegations in other cases against Abbott, so it is not as if he removed them from the complaint here because he recognized they should never have been made. *E.g., Hasu-Beland v. Abbott Labs.*, Case No. 1:20-cv-01199-PB, Dkt. 11, First Am. Compl. ¶¶ 79, 112 (D.N.H.); *Rinehart v. Abbott Labs.*, No. 1:21-cv-00805-SDG, Dkt. 1, Compl. ¶¶ 89, 140 (N.D. Ga.).

Plaintiff tries to justify piling on more allegations in order to "ensure that the record that this Court certifies to the Connecticut Supreme Court is as fulsome as possible under the circumstances." (Mot. at 8.) That explanation ignores this Court's ruling. The Court's order required the parties to "engage in limited discovery regarding facts"—not allegations. Nothing in the order justifies this amendment. For its certification, the Court may have in mind a brief stipulation of facts centered on the four questions the Court asked. (Dkt. 87 at 14.) By cramming his complaint with scandalous and false allegations that will *never* lead to a brief stipulation of facts, Counsel is deliberately interfering with the certification process the Court directed the parties to follow.

Counsel has, in short, ignored and attempted to interfere with the Court's order about how to proceed, causing Defendants to waste an ever-increasing amount of time and resources responding to useless pleadings and amendments. Sanctions are justified for this reason as well.

**B.      Counsel has unreasonably and vexatiously multiplied these proceedings.**

Counsel has established a pattern of using amendments and other filings to delay and needlessly complicate the case. The first request to amend prevented the Court from ruling on Defendants' motions to dismiss, so the parties started over with a new complaint and a new motion. The second was filed *during* briefing on Defendants' motions to dismiss the first amended complaint; the third was requested *during* oral argument, in an effort to prevent the Court from ruling; and the fourth was filed a week later while the third was under advisement. Even after having been challenged during argument about citing marketing unrelated to the products at issue (Dkt. 82, Hr'g Tr. at 14–17), the fourth amended complaint added allegations and exhibits about products not at issue, which the Court held were useless to help Plaintiff state a claim. The Court then issued its ruling, only to prompt an immediate "motion for clarification,"

followed by the fifth request for leave to amend—this time amending causes of action that *the Court already held state a claim*. It is the most pointless amendment of them all.

Counsel tries to justify piling on more allegations because he is "aware" of a "growing body of cases [that] have led to the discovery of additional information." His motion lists five other cases about infant formula and NEC cases. (Mot. at 4.) It is no wonder he is aware of them: he is behind every single one of them. None have progressed beyond a motion to dismiss, and none have led to the discovery of additional information. There is no need for extra allegations here just because Counsel is also filing other lawsuits. He should not be rewarded for trying to mislead the Court by downplaying his own role in those other cases, even as he tries to slow this case to delay resolutions of Abbott's arguments that may hinder him from filing even more.[2]

In *Gollomp*, 568 F.3d at 372, sanctions were based on the plaintiff filing a pleading "weighing in at 61 pages"—well short of Plaintiff's 71-page proposed amended complaint, which would have been around 85 pages had the entire thing been double-spaced. "[W]hen an

---

[2] The Court should not take at face value Plaintiff's implication that the "growing body of cases" attacking Abbott and Mead Johnson is somehow organic. Even the named plaintiff in this case has close ties to Plaintiff's counsel. Kevin Curtis Ferry is identified as an independent fiduciary plaintiff under Conn. Gen. Stat. § 45a-303. *Lugo v. Rapuano*, 2007 WL 356024, at *4 (Conn. Super. Ct. Jan. 23, 2007) (independent fiduciary "must remain loyal to the estate [h]e is administering and must not act out of self-interest or for the interests of parties other than the heirs, distributees, and creditors of the estate"). Mr. Ferry is a licensed Connecticut attorney who has collaborated as co-counsel on at least 10 cases with lead counsel Stephen Reck, his law school classmate. Kevin Ferry, LinkedIn Profile, linkedin.com/in/kevin-ferry-543a50184; Stephen Reck, Firm Profile, stephenreck.net/attorneys; *Picard v. Guilford House*, No. AC 41852 (Conn. App. Ct.); *McGhee v. Killingly Eye Care*, No. WWM-CV-16-6010484-S (Conn. Super. Ct.); *Joseph v. Bridgeport Hosp.*, No. FBT-CV-15-6052900-S (Conn. Super. Ct.); *Lubitski v. Prohealth Physicians*, No. KNL-CV-14-6021468-S (Conn. Super. Ct.); *Byrdsong v. Saint Francis Hosp. & Med. Ctr.*, No. HHD-CV-14-6051273 (Conn. Super. Ct.); *Birkhamshaw v. Socha*, No. KNL-CV-11-6007344-S (Conn. Super. Ct.); *Colony Ins. v. P&M Prop.*, No. UWY-CV-09-4019006-S (Conn. Super. Ct.); *Donahue v. Byrd*, No. MMX-CV-08-5004578-S (Conn. Super. Ct.); *Kirdzik v. P&M Prop.*, No. UWY-CV-08-5010032-S (Conn. Super. Ct.); *Doe v. Carreiro*, No. MMX-CV-02-0098755-S (Conn. Super. Ct.); *Doe v. Carreiro*, No. KNL-CV-02-0562574-S (Conn. Super. Ct.).

attorney recklessly creates needless costs[,] the other side is entitled to relief, *In re TCI*, 769 F.2d 441, 446 (7th Cir. 1985), so sanctions should be imposed here. To bring his endless string of pointless filings to an end, Abbott urges that Plaintiff's counsel be sanctioned and directed to pay the fees and costs that Abbott incurred in connection with this filing.

## II.     The Court should deny leave to amend.

"[T]he district court has the discretion to deny leave [to amend the complaint] if there is a good reason for it, such as futility, bad faith, … or undue prejudice to the opposing party." *Royal Indem. v. King*, 532 F. Supp. 2d 404, 417 (D. Conn. 2008) (Underhill, J.); *see also Jin v. Metro. Life Ins.,* 310 F.3d 84, 101–02 (2d Cir. 2002). Plaintiff's proposed amendment is all three.

### A.     The amendment is futile.

Consideration of Plaintiff's motion should start and end with this Court's ruling that the prior complaint already states claims for failure to warn and design defect. The proposed complaint does not try to replead causes of action that were dismissed; in fact, it deletes them. Nor does the proposed complaint try to add any new causes of action. Instead, it just makes more allegations to state the very same claims. Plaintiff even admits that it simply "clarifies and expands upon prior allegations and furthers the Plaintiff[']s claims." (Mot. at 6.)

The amendment thus violates Rule 8(a)(2)'s mandate that a complaint include only "a short and plain statement of the claim." "Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Townsend v. Corr. Officer Muckle*, 2017 WL 5606745, at *2 (D. Conn.) (Underhill, J.) (quote omitted). Plaintiff's amendment accomplishes nothing more than to "merely reiterate and embroider the claims [plaintiff] already

11

presented in her original complaint," so it is futile. *Coleman v. Ramada Hotel Operating*, 933 F.2d 470, 473 (7th Cir. 1991).[3]

Not only is the entire proposed amendment futile, but many of its constituent parts are also plainly futile. For example, the prior complaint made allegations about, and attached as exhibits, marketing materials (including some from *after* the events of this case). (Dkt. 50 ¶¶ 5–6, 67–70, 87–88, Count I ¶¶ 113(B)(a), 113(C)(k), 113(D), 113(F)(a), 113(F)(g), Count II ¶¶ 113(B)(a), 113(C)(k), 113(D), 113(F)(a), 113(F)(g); Dkt. 81 Exs. A–R.) Plaintiff added them to the complaint solely to support the misrepresentation and breach of warranty claims. (Dkt. 87 at 39–41.) This Court held, however, that "none of those statements or exhibits helps [Plaintiff] plead plausible misrepresentation and warranty claims," because most did not concern any formula at issue in this case, none contained a false statement, and the infant's parents and doctors were not alleged to have seen any of them. (*Id*. at 41–42, 42 n.27.)

Now, in the proposed amended complaint, Plaintiff has *deleted* the misrepresentation and warranty causes of action but *left in and supplemented* the allegations and marketing materials that were previously added solely to support those dismissed claims. (Proposed 5th Am. Compl. ¶¶ 32–33, 61–70, 100–19, 162(C)(r)–(s), 196–234, 277(C)(r)–(s); Dkt. 107 Exs. A–R.) Worse, Plaintiff added new marketing allegations that go as far back as the 1980s and 1990s (Proposed 5th Am. Compl. ¶¶ 209–12), which are not only irrelevant to the doctors' feeding decisions in 2017 but are also far too old to be part of this case because of the three-year statute of limitations

---

[3] *See also Aetna Life Ins. v. Guerrera*, 300 F. Supp. 3d 367, 389 (D. Conn. 2018) (denying leave to file an amendment that sought to "amplify and expand the allegations"); *Wandering Dago v. N.Y. State Off. of Gen. Servs.*, 2014 WL 12797920, at *13 (N.D.N.Y.) ("[A]dornments, embroidering, embellishments, and aggrandizements within a complaint are unnecessary; they just clutter and confound all that is required for a well-pled pleading, and amount to being superfluous."); *SEC v. Yorkville Advisors*, 2013 WL 5350658, at *1 (S.D.N.Y.) (same); *Vann v. Fischer*, 2010 WL 2889538, at *2 (W.D.N.Y.) (same).

that applies to any claim about the "marketing, packaging, or labeling of any product." Conn. Gen. Stat. §§ 52-572m(b), 52-577a(a).[4]

The proposed amended complaint also includes allegations that Abbott somehow defrauded FDA—by not conducting drug trials that no law requires, by not collecting data that FDA did not request, or by not telling FDA of Plaintiff's theory that the warnings are inadequate. (*E.g.*, Proposed 5th Am. Compl. ¶¶ 190, 241, 268, 272, 274.) Not only are these allegations meritless, the Supreme Court has held that private plaintiffs may not assert a claim of fraud on the FDA. *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348–53 (2001); *see also Doe v. Bausch & Lomb*, 443 F. Supp. 3d 259, 271–72 (D. Conn. 2020); *Pratt v. Bayer*, 2020 WL 5749956, at *3–4, 9 (D. Conn.). It would be futile to allow Plaintiff to add these allegations.

### B. The amendment is made in bad faith and would prejudice Abbott.

When a plaintiff has already been warned about inflammatory and scandalous accusations, but an amended complaint continues to make "scandalous and inflammatory noise," that is grounds for denying the amendment. *Goldsmith v. Goldsmith*, 2017 WL 11471785, at *5–6 (W.D. Penn.). It is "a total waste of judicial resources to in effect engage in 'wash, rinse, repeat' as a case management tool." *Id*.

The proposed amendment also shows other significant signs of bad faith. For one, it makes five and a half pages of irrelevant allegations about an unrelated patent infringement lawsuit regarding a different product, Similac Probiotic Tri-Blend, that was never fed to the

---

[4] As another example of the divide separating Plaintiff's new allegations from the substance of this case, the proposed amended complaint faults Abbott for giving formula free of charge to parents as they leave the hospital, "so that vulnerable parents continue to use formula to feed their babies after they leave the NICU, resulting in great expense to the parents, significant risk for the babies, and substantial profit to Defendant Abbott." (Proposed 5th Am. Compl. ¶ 204.) That is irrelevant (and tone deaf) in a case alleging that an infant did not survive long enough to leave the hospital.

13

infant here. (Proposed 5th Am. Compl. ¶¶ 56–57.) The amendment assembles a long list of things that Abbott supposedly admitted in that case: that it launched this product, that it trained its sales team to prepare for the launch, Abbott admitted that it sells the product, and so on. It then leaps to the argumentative conclusion that those allegations somehow show that Abbott concedes that the infant formulas at issue *here* are harmful.

Those new allegations are irrelevant. Similac Probiotic Tri-Blend did not even go to market until August 2019 (*id*. ¶ 56(g)), years after the events of this case. And this Court will search the amendment in vain to find Abbott admitting, as Plaintiff asserts, that the formulas fed to the infant in the present case are "associated with NEC, devastating injuries, and death" (Mot. at 4.) Abbott's position in the patent case has nothing to do with the constituents of any prior formulas, but instead is that the alleged inventions are not novel, patentable, or infringed.

Plaintiff similarly alleges that Abbott's recent development of formulas that include Human Milk Oligosaccharides somehow constitute an admission that its other formulas, without HMOs, are defective. (*Id*. at 4–5; Proposed 5th Am. Compl. ¶¶ 58–60.) Again, Plaintiff simply pretends as if Abbott has conceded it is harming infants on purpose by continuing its decades-long efforts to improve and perfect the nutritional aspects of infant formula. That allegation further demonstrates Plaintiff's bad faith.

Plaintiff also argues that the new allegations "show that the product is not 'unavoidably unsafe.'" (Mot. at 6.) This is Plaintiff's attempt to overcome this Court's rulings—on the motions to dismiss and again on the motion for "clarification"—that the prior complaint alleged the formulas are unavoidably unsafe. But in fact the amendment does even *more* to show this Court's ruling was correct. It now alleges, for the first time, that the formulas are "significantly more dangerous than most prescription drugs." (Proposed 5th Am. Compl. ¶ 277(C)(q); *see also*

*id.* ¶ 268.) Prescription drugs are the paradigm of unavoidably unsafe products. Restatement (Second) of Torts § 402A cmt. k. Alleging that the formulas are significantly more dangerous can only mean that Plaintiff contends they, too, are unavoidably unsafe.

Finally, the amendment prejudices Abbott. It has produced yet another round of unnecessary briefs, and it is intended to interfere with the Court's order about certifying based on facts developed through limited discovery. It is time to proceed with the case as this Court directed. Four amendments, 20+ briefs, and 170 pages about the complaint are enough.

## CONCLUSION

This Court should sanction Counsel and deny Plaintiff's leave to amend the complaint.

Dated: March 11, 2021						ABBOTT LABORATORIES, INC.


							By: */s/ John J. Robinson*
								John J. Robinson (ct14802)
								Kelcie B. Reid (ct30550)
								Gordon Rees Scully Mansukhani, LLP
								95 Glastonbury Boulevard, Suite 206
								Glastonbury, CT 06033
								(860) 278-7448
								(860) 560-0185 (fax)
								Email: jjrobinson@grsm.com
								Email: kreid@grsm.com

								Stephen V. D'Amore (admitted *pro hac vice*)
								Scott P. Glauberman (admitted *pro hac vice*)
								Bryce A. Cooper (admitted *pro hac vice*)
								Winston & Strawn LLP
								35 West Wacker Drive
								Chicago, IL 60601
								(312) 558-5600
								(312) 558-5700 (fax)
								Email: sdamore@winston.com
								Email: sglauberman@winston.com
								Email: bcooper@winston.com

								*Attorneys for Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2021 the foregoing document was filed electronically and served by mail on anyone able to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECMF System.

*/s/ John J. Robinson*
John J. Robinson