UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEVIN FERRY, *as administrator of the estate of Tylea Hundley,*<br>    Plaintiff,<br><br>v.<br><br>MEAD JOHNSON & CO., LLC, et al.,<br>    Defendants. | No. 3:20-cv-0099 (SRU) |

**ORDER ON MOTION FOR EVIDENTIARY HEARING**
**REGARDING POTENTIALLY SANCTIONABLE CONDUCT**

In December 2019, Plaintiff Kevin Ferry ("Ferry") commenced this product liability action against defendants Mead Johnson & Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories, Inc. On April 1, 2021, Ferry filed a notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Doc. No. 116.

Presently before the Court is a post-dismissal motion for an Evidentiary Hearing[1] dated April 23, 2021, filed on behalf of Defendant Abbott Laboratories, Inc ("Abbott").[2] Doc. No. 118. Abbott asks this Court to conduct a hearing to determine whether Ferry's counsel, Stephen M. Reck ("Reck"), engaged in sanctionable conduct.

For the reasons that follow, I **deny** Abbott's motion.

**I.     STANDARD OF REVIEW**

---

[1]     "It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *see also de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250, 257 (S.D.N.Y. 2003).

[2]     Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company did not join in the motion.

A court "has inherent authority 'to conduct an independent investigation in order to determine whether it has been the victim of fraud.'" *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). In this regard, it is within a court's discretion to hold an evidentiary hearing on a sanctions motion, although no such hearing is required. *See Shah v. Eclipsys Corp.*, No. 08-cv-2528, 2010 U.S. Dist. LEXIS 67700, at *50–51 (E.D.N.Y. July 7, 2010) (noting that many courts have exercised their discretion to hold evidentiary hearings before imposing sanctions for fraud on the court, although such a hearing is not always necessary); *In re Dynex Cap., Inc. Sec. Litig.*, No. 05-cv-1897, 2011 WL 2581755, at *3 (S.D.N.Y. Apr. 29, 2011), *report and recommendation adopted*, 2011 WL 2471267 (S.D.N.Y. June 21, 2011).

## II.  DISCUSSION

1. <u>Relevant Law</u>

By way of background, Abbott asserts two bases upon which this court could impose sanctions: a court's inherent power and 28 U.S.C. § 1927. To impose sanctions pursuant to a court's inherent power, a court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay. *See Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995). In turn, Title 28, section 1927 of the United States Code "provides that a court may impose sanctions on any attorney who so multiplies the proceedings in any case unreasonably and vexatiously." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (cleaned up). Section 1927 authorizes the imposition of sanctions when "there is a clear showing of bad faith on the part of an attorney." *Id.* (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)).

2. Discussion

Abbott argues three bases on which sanctionable conduct could be found: first, that Reck engaged in unethical advertising; second, that Reck used Ferry as the estate administrator to engage in vexatious litigation, and finally that Reck's voluntary dismissal of this case was improperly motivated. Whether considered together, or independently, the result is the same: none of the bases is persuasive.

i. *Unethical Advertising*

First, Abbott argues Reck's use of targeted social media advertising to find "bereaved parents to try to generate lawsuits about Abbott's infant formulas" could serve as a potential basis for sanctions. Def. Mot. for Evidentiary Hearing, Doc. No. 118-1, at 2. Those advertisements, Abbott contends, violated several of the Connecticut Rules of Professional Conduct.[3] Reck does not dispute the misleading nature of the ads. Instead, Reck argues that sanctions would be unwarranted on that basis. I agree.

Importantly, Reck maintains that the instant case did not come to his firm via advertising. Pl. Mem. in Opp., Doc. No. 119, at 4. Further, the ads were generated by a third-party marketing firm. *Id.* When Reck was made aware of the ads' issues, presumably when Abbott contacted him, the ads were "immediately pulled." *Id.* Abbott cites to *Holley v. Gilead Scis., Inc.*, No. 18-cv-06972, 2021 WL 940594, at *1 (N.D. Cal. Mar. 12, 2021), for the proposition that misleading statements in advertisements can be grounds for sanctions. But the advertisements at issue in *Holley* also contained plainly false statements. *Id.* At most, the ads here were only misleading.

ii. *Ferry as Administrator*

---

[3] Specifically, Abbott states that the ads: (a) misleadingly stated parents were entitled to compensation without including conditional language; (b) did not identity counsel; and (c) did not have the required "Attorney Advertising" label. Def. Mot. for Evidentiary Hearing, Doc. No. 118-1, at 2.

3

Next, Abbott contends sanctions may be warranted because "[t]he choice of the estate administrator in this case was unusual." Def. Mot. for Evidentiary Hearing, Doc. No. 118-1, at 15. Following infant Tylea Hundley's passing, Ferry was appointed as administrator of her estate. For Abbott, such a choice was unusual because Ferry's "only obvious connection to the present case is his 30-year friendship with Mr. Reck." *Id.* Additionally, Abbott implies that Ferry breached his statutorily imposed duty to be an independent fiduciary of the estate by voluntarily dismissing the case. *Id.*

Those claims are also unavailing. A Court of Probate appointed Ferry as administer of Hundley's estate; not Reck. *See* Pl. Opp., Doc. No. 119, at 3. Before dismissing the case, Ferry sought the advice of the Court of Probate. *Id.*; *Order*, Doc. No. 118-12. Moreover, is that Hundley's parents wanted Ferry to be the administrator, and Abbott presents no evidence to suggest otherwise. *See* Pl. Opp., Doc. No. 119, at 3. At bottom, Abbott's theories are just that; theories rooted in nothing more than speculation, which is an insufficient reason to conduct an evidentiary hearing.

    *iii.*    *Voluntary Dismissals*

Abbott's final basis for Reck's potentially sanctionable conduct arises out of two voluntary dismissals in related cases: *Rinehart v. Abbott*, No. 21-cv-805 (N.D. Ga.); and *Gschwend v. Abbott*, No. 21-cv-2151 (W.D. Tenn.).[4] Those dismissals, Abbott argues, "appear to show vexatious conduct." Def. Mot. for Evidentiary Hearing, Doc. No. 118-1, at 17.

The Second Circuit has made clear that "[w]ith regard to the Rule 41 dismissal, a plaintiff who has not been served with an answer or motion for summary judgment has an unfettered right voluntarily and unilaterally to dismiss an action." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,

---

[4]    In its Reply, Abbott refers to a third case as well: *Hasu-Beland v. Abbott Labs.*, No. 1:20-cv-1199 (D.N.H.).

564 F.3d 110, 114 (2d Cir. 2009) (quoting *Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979)) (cleaned up). Although "[d]ismissal of a suit may be disruptive and annoying," the rules allow it. *Wolters Kluwer*, 564 F.3d at 110. So unless there is a finding of bad faith, plaintiffs are "entitled to file a valid Rule 41 notice of voluntary dismissal for any reason." *Id.* It is true that Reck, acting on behalf of Ferry, dismissed this case after litigating it for nearly fifteen months. Importantly though, Abbott had not served an answer, or filed a motion for summary judgment. Thus, Reck, acting on behalf of Ferry, had an "unfettered right" to dismiss this action. And Abbott offers no basis for finding that Reck acted in bad faith—only that he *may have* acted in bad faith.

On top of that, Abbott has failed to show how Reck burdened the Court by "multipl[ying] the proceedings," a threshold requirement to warrant sanctions. *See* 28 U.S.C. § 1927. Abbott asserts that this case is akin to *Thompson v. Fla. Bar*, No. 610-cv-442, 2010 WL 5497673 (M.D. Fla. Nov. 16, 2010). Not quite. In *Thompson*, the court imposed a pre-filing injunction on a *pro se* plaintiff, Thompson, after he filed twelve lawsuits against the same set of defendants over the span of four years in the Florida federal courts. *Id.* The same cannot be said here. The related lawsuits are not concentrated in the District of Connecticut. Each lawsuit, although brought by Reck, is on behalf of a different victim and plaintiff. And the number of cases Thompson "filed and dismissed" is three times the number of cases cited here. Taken together, the record does not suggest that Reck's dismissal of the instant case burdened this Court.

In the end, it is within a court's inherent authority to hold a hearing to determine if it has been a victim of fraud. There is nothing on the face of this record that leads me to believe that is the case. Although Abbott speculates that Reck engaged in sanctionable conduct, that is not a sufficient reason for this Court to hold an evidentiary hearing.

5

### III. CONCLUSION

For the foregoing reasons, I **deny** Abbott's motion for an evidentiary hearing.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of March 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
